IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WAYNE CHRISTENSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 12-1511 |
| ) | Judge Mark R. Hornak |
| CAROLYN W. COLVIN, ACTING ) | Magistrate Judge Lisa Pupo Lenihan |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

**I.   Introduction**

Plaintiff Wayne Christenson ("Christenson") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f]. The matter is presently before the Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56. ECF Nos. 10 & 13. For the reasons that follow, it is respectfully recommended that Christenson's motion for summary judgment (*ECF No. 10*) be denied, that the Commissioner's motion for summary judgment (*ECF No. 13*) be granted, and that the Commissioner's decision be affirmed.

**II.   Procedural History**

Christenson protectively applied for DIB and SSI benefits on August 1, 2008, alleging that he had become "disabled" on December 31, 2001. R. at 179, 186, 224. Pennsylvania's

1

Bureau of Disability Determination denied the applications on January 14, 2009. R. at 70, 75. Christenson responded on March 10, 2009, by filing a request for an administrative hearing. R. at 81-82. On June 23, 2010, Christenson appeared before Administrative Law Judge ("ALJ") Barbara Artuso. R. at 23-29. Since Christenson was unrepresented, the ALJ offered to postpone the hearing. R. at 26. Christenson accepted the ALJ's offer and expressed an intention to secure the services of an attorney. R. at 26-27. The hearing was ultimately conducted on December 13, 2010. R. at 30. With the assistance of counsel, Christenson appeared and testified at the hearing. R. at 38-59. Timothy E. Mahler ("Mahler"), an impartial vocational expert, provided testimony about the expectations of employers existing in the national economy. R. at 59-64. In a decision dated December 22, 2010, the ALJ determined that Christenson was not "disabled" within the meaning of the Act. R. at 6-18.

On February 17, 2011, Christenson sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. R. at 172-174. The Appeals Council denied the request for review on August 16, 2012, thereby making the ALJ's decision the "final decision" of the Commissioner in this case. R. at 1. Christenson commenced this action on October 18, 2012, seeking judicial review of the Commissioner's decision. ECF Nos. 1-2. Christenson and the Commissioner filed motions for summary judgment on January 28, 2013, and March 4, 2013, respectively. ECF Nos. 10 & 13. Those motions are the subject of this report and recommendation, which is being filed pursuant to 28 U.S.C. § 636(b)(1)(C).

### III. <u>Standard of Review</u>

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision

is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject

to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

## IV.     The ALJ's Decision

In her decision, the ALJ determined that Christenson had not engaged in substantial gainful activity subsequent to his alleged onset date. R. at 11. Christenson was found to be suffering from diabetes mellitus, gastroesophageal reflux disease ("GERD"), asthma, allergies, bipolar disorder, depression, and a history of polysubstance abuse. R. at 11. These impairments were deemed to be "severe" under the Commissioner's regulations. R. at 11; 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). The ALJ concluded that

Christenson's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 12.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Christenson's "residual functional capacity"[1] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to occasional bending, must avoid concentrated exposure to fumes, odors, dusts, gases, and environments with poor ventilation, and is limited to simple, routine, repetitive work activity involving understanding, remembering, and carrying out only simple instructions and making only simple work related decisions, involving only occasional interaction with co-workers.

R. at 12. Christenson had "past relevant work"[2] experience as a carpet cleaning technician and an industrial cleaner. R. at 60. Mahler classified those positions as "skilled"[3] and "unskilled"[4] jobs at the "medium"[5] and "heavy"[6] levels of exertion. R. at 60. He testified that Christenson's prior positions had involved more than occasional bending and regular exposure to chemical and

---

[1] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).
[2] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.
[3] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. §§ 404.1568(c), 416.968(c).
[4] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, [the Commissioner] consider[s] jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(a).
[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).
[6] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. §§ 404.1567(d), 416.967(d).

cleaning agents. R. at 61. Since those characteristics contravened the functional and environmental restrictions contained in the ALJ's residual functional capacity assessment, it was determined that Christenson could not return to his past relevant work. R. at 17.

Christenson was born on September 24, 1960, making him forty-one years old on his alleged onset date and fifty years old on the date of the ALJ's decision. R. at 17, 38. For most of the period of time at issue in this case, he was classified as a "younger person" under the Commissioner's regulations.[7] 20 C.F.R. §§ 404.1563(c), 416.963(c). Christenson became a "[p]erson closely approaching advanced age" on September 24, 2010, when he reached the age of fifty. 20 C.F.R. §§ 404.1563(d), 416.963(d). He had a limited education[8] and an ability to communicate in English. R. at 38, 227, 235; 20 C.F.R. §§ 404.1564(b)(3), (5), 416.964(b)(3), (5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Christenson could work as a hand packer or delivery driver. R. at 18. Mahler's testimony established that those jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).[9] R. at 61.

## V. Discussion

The arguments advanced by Christenson all relate to the ALJ's evaluation of his mental impairments. ECF No. 11 at 5-11. Christenson does not argue that he had physical and

---

[7] The regulations recognize that "younger persons" between the ages of forty-five and forty-nine are more limited in their ability to adjust to other work than are persons who have not yet attained the age of forty-five. 20 C.F.R. §§ 404.1563(c), 416.963(c).

[8] Christenson dropped out of school before completing the twelfth grade. R. at 38, 235, 392.

[9] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

environmental limitations extending beyond those found by the ALJ.[10] Therefore, only the evidence pertaining to Christenson's mental limitations is squarely at issue.

On December 24, 2008, Dr. Daniel C. Marston performed a consultative psychological evaluation of Christenson in connection with his applications for DIB and SSI benefits. R. at 390-397. In a written report detailing the findings of the evaluation, Dr. Marston stated that Christenson's "difficulties with functioning [had] seemed primarily related to difficulties handling somewhat more complex tasks." R. at 395. Dr. Marston explained that Christenson would find himself in "stressful situations" if he had to complete difficult tasks. R. at 395. Nonetheless, Christenson was deemed to be only "moderately" limited in his abilities to understand, remember and carry out detailed instructions, make judgments concerning simple work-related decisions, respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting. R. at 396. "Slight" limitations were found in Christenson's abilities to understand, remember and carry out short, simple instructions and interact appropriately with supervisors, co-workers, and members of the general public. R. at 396. Dr. Marston predicted that "formal mental health treatment" would most likely improve Christenson's "overall prognosis." R. at 395.

Dr. Richard A. Heil, a non-examining psychological consultant, opined on January 12, 2009, that Christenson was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairments." R. at 401. In the narrative portion of his consultative report, Dr. Heil made the following observations:

> The claimant can perform simple, routine, repetitive work in a stable environment. He can understand, retain, and follow simple job instructions, i.e., perform one and two-step tasks. He is able to maintain concentration and attention for extended periods. He would be able to maintain regular attendance.

---

[10] Christenson discounts the importance of evidence submitted by Dr. Ken Gibson, who provided treatment for Christenson's physical impairments. ECF No. 11 at 7, 10.

8

> Moreover, he is able to maintain socially appropriate behavior and can perform the personal care functions needed to maintain an acceptable level of personal hygiene. He is capable of asking simple questions and accepting instruction. Additionally, he would be able to make simple decisions. He can sustain an ordinary routine and adapt to routine changes without special supervision. In addition, he remains capable of understanding and remembering instructions, concentrating, interacting with others, and adapting to changes in the workplace.

R. at 401. Dr. Heil accorded "great weight" to Dr. Marston's examination report. R. at 401. Christenson's subjective complaints were deemed to be only "partially credible." R. at 401.

Christenson sought formal mental health treatment in March 2010. He was examined by Dr. Joel Last on March 18, 2010. R. at 543. Although Christenson had a "sad and anxious" mood and a "dysphoric" affect, the remaining portions of the mental status examination yielded normal results. R. at 543. Dr. Last assigned Christenson a Global Assessment of Functioning ("GAF") score of fifty-five.[11] R. at 543. Christenson continued to see Dr. Last through the summer of 2010. R. at 544-547.

On March 31, 2009, Christenson attended his first psychotherapy session with Dr. Cynthia Peterson-Handley. R. at 416, 421. He continued to attend treatment sessions with Dr. Peterson-Handley on a weekly basis. R. at 416, 421. On a mental health assessment form completed on September 1, 2010, Dr. Peterson-Handley stated that Christenson could not show up for work on a daily basis or perform the duties of a job requiring him to work eight hours per day. R. at 419. She reported that his depression was "vegetative in nature" when he was "down," causing him to remain in bed and refrain from showering or shaving. R. at 418. Dr.

---

[11] "The Global Assessment of Functioning ('GAF') scale, designed by the American Psychiatric Association, ranges from zero to one hundred and assesses a person's [level of] psychological, social and occupational function[ing]." *Taliaferro v. Astrue*, 788 F.Supp.2d 412, 414, n. 2 (W.D.Pa. 2011). A GAF rating falling between fifty-one and sixty *may* be indicative of an individual who exhibits "moderate difficulty in social, occupational, or school functioning." American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, ("DSM-IV-TR")(4th ed. 2000), at 34. An individual with a GAF score in this range *may* experience "conflicts with peers or co-workers." *Id.*

9

Peterson-Handley estimated that Christenson's GAF rating had fluctuated between forty-eight and fifty-two during the previous year.[12] R. at 420.

Dr. Last prescribed Wellbutrin for Christenson. R. at 546. Christenson apparently experienced a "very bad reaction" to that medication. R. at 541. In a letter to Christenson's counsel dated December 8, 2010, Dr. Peterson-Handley stated that the Wellbutrin had "started a downward spiral" in Christenson's condition, causing him to suffer from a physical illness lasting for an entire month. R. at 541. Christenson cancelled several psychotherapy sessions during the course of his illness. R. at 541. The documentary record suggests that he may not have seen Dr. Peterson-Handley after November 10, 2010.[13] R. at 421.

At the time of his administrative hearing, Christenson was living with his younger sister, Lisa Christenson ("Lisa"). R. at 284. In a written statement to the SSA dated December 10, 2010, Lisa reported that Christenson would sometimes sit and cry for no apparent reason. R. at 284. She stated that he could function "fairly well" on other occasions. R. at 284. Lisa further asserted that Christenson would frequently enter his bedroom and "isolate himself" when "other family members" were around. R. at 284. At the hearing, Christenson testified that he sometimes avoided contact with his father due to embarrassment stemming from his inability to work. R. at 57-58.

The Listing of Impairments describes impairments which render a claimant *per se* disabled without regard to his or her age, education, or past work experience. *Bowen v. Yuckert*,

---

[12] A GAF score falling between forty-one and fifty is *sometimes* indicative of an individual exhibiting "serious impairment in social, occupational, or school functioning." American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, ("DSM-IV-TR")(4th ed. 2000), at 34. An individual with a GAF score in this range *may* be "unable to keep a job." *Id.*

[13] When the Appeals Council denied Christenson's request for review, the ALJ's decision became the "final decision" of the Commissioner in this case. *Sims v. Apfel*, 530 U.S. 103, 106-107, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). The ALJ's decision was issued on December 22, 2010. R. at 6-18. Any treatment pursued by Christenson after that date is not germane to the factual issues in dispute. It appears that his last psychotherapy session with Dr. Peterson-Handley during the relevant period of time occurred on November 10, 2010. R. at 421.

10

482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Knepp v. Apfel*, 204 F.3d 78, 85 (3d Cir. 2000). In order to qualify as *per se* disabled under the Commissioner's regulations, a claimant must demonstrate that his or her impairment (or combination of impairments) either "matches" a Listing or is "equivalent" to a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). An impairment "matches" a Listing only if it satisfies *all* of the relevant medical criteria. *Id.* at 530. An impairment is "equivalent" to a Listed Impairment only if it is supported by medical findings equal in severity to *all* of the criteria applicable to the most similar Listing. *Id.* at 531. The claimant bears the burden of presenting evidence to support his or her allegation of *per se* disability. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

At the hearing, Christenson specifically argued that he was *per se* disabled under Listing 12.04. R. at 37. The ALJ resolved the third step of the sequential evaluation process against Christenson without specifically identifying the Listings under consideration. R. at 12. In *Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112, 120, n. 2 (3d Cir. 2000), the United States Court of Appeals for the Third Circuit explained that an administrative law judge is responsible for specifying the Listings relevant to a claimant's impairments. The rule announced in *Burnett* is designed to facilitate the meaningful judicial review contemplated by the Act. *Burnett*, 220 F.3d at 119-120. Christenson maintains that the ALJ's failure to expressly discuss the applicability of Listing 12.04 constituted reversible error. ECF No. 11 at 7-8.

Although the ALJ did not specifically mention Listing 12.04, it is clear that the requirements of that Listing were given proper consideration. Dr. Heil evaluated Christenson's impairments under Listings 12.04 and 12.09. R. at 403. In his report, Dr. Heil opined that

11

Christenson's impairments did not satisfy the "B" and "C" criteria of those Listings. R. at 413-414. The ALJ specifically adopted Dr. Heil's findings pertaining to the "B" and "C" criteria. R. at 12, 14-16. She was not required to "use particular language or adhere to a particular format in conducting h[er] analysis." *Jones*, 364 F.3d at 505. Since the ALJ's analysis was sufficiently developed to permit meaningful judicial review of her factual findings, it satisfied the standard established in *Burnett*. *Id.*

Christenson contends that the assessment completed by Dr. Peterson-Handley would support a finding of *per se* disability under Listing 12.04. ECF No. 11 at 8. As an initial matter, the question of *per se* disability at the third step of the sequential evaluation process is expressly reserved for the Commissioner's determination. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Any opinions expressed by Christenson's treating sources concerning the potential application of Listing 12.04 were not entitled to significant weight. *Valder v. Barnhart*, 410 F.Supp.2d 134, 140 (W.D.N.Y. 2006). Furthermore, the statements made by Dr. Peterson-Handley would not necessarily warrant a finding of *per se* disability. Dr. Peterson-Handley did assert that Christenson had "marked impairments" in the area of social functioning. R. at 418. That opinion conflicted with the view previously expressed by Dr. Heil, who had found Christenson to be only "moderately" limited in that area. R. at 413. Nevertheless, Christenson makes no attempt to explain how Dr. Peterson-Handley's assessment lines up with Listing 12.04's other requirements. ECF No. 11 at 8. Since Christenson does not articulate his reasons for believing that his impairments met or equaled that Listing, the Court has no basis for setting aside the ALJ's step-three determination. *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 93-94 (3d Cir. 2007).

In determining Christenson's residual functional capacity, the ALJ placed significant reliance on the assessments provided by Dr. Marston and Dr. Heil. R. at 14-17. She also pointed out that Dr. Last had assigned Christenson a GAF rating of fifty-five, which was "indicative of only moderate symptoms." R. at 15. Christenson faults the ALJ for crediting the opinions of Dr. Marston and Dr. Heil over that of Dr. Peterson-Handley. ECF No. 11 at 5-7.

Opinions expressed by a claimant's treating healthcare providers do not bind the Commissioner on the issue of a claimant's residual functional capacity. *Brown v. Astrue*, 649 F.3d 193, 196, n. 1 (3d Cir. 2011). Every medical opinion, regardless of its source, must be afforded some consideration. *Williams v. Sullivan*, 970 F.2d 1178, 1185, n. 5 (3d Cir. 1992). The probative force of a particular assessment can only be judged in relation to the evidentiary record as a whole. *Miller v. Commissioner of Social Security*, 172 F.3d 303, 304 (3d Cir. 1999). When conflicting assessments are presented, an administrative law judge is typically "free to choose the medical opinion of one doctor over that of another." *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009). The mere fact that Dr. Peterson-Handley submitted an assessment supporting a finding of disability does not mean that Christenson was entitled to an award of benefits. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). The United States Court of Appeals for the Third Circuit looks with disfavor on administrative decisions which credit opinions expressed by non-examining consultants over those conveyed by treating sources. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008). In this case, however, the ALJ relied on evidence presented by a treating psychiatrist, a consultative examiner and a non-examining consultant in determining that Christenson was capable of working. R. at 14-17. It is also worth noting that the ALJ afforded Dr. Peterson-Handley's findings "appropriate weight" in restricting Christenson to a range of work involving the performance of

only simple, routine, repetitive work activities, the implementation of only simple work-related instructions, and the making of only simple work-related decisions. R. at 12, 14.

Christenson appears to base his argument on the lapse of time between the reports supplied by Dr. Marston and Dr. Heil and the assessment submitted by Dr. Peterson-Handley. He argues that his depression worsened throughout much of 2009 and 2010, thereby rendering the opinions of Dr. Marston and Dr. Heil obsolete. ECF No. 15 at 3. In her statement of December 10, 2010, Lisa asserted that Christenson's condition had worsened during the previous two years. R. at 284. In an attempt to undermine the ALJ's reasoning, Christenson suggests that the evidence relied upon by the ALJ was simply outdated at the time of her decision. ECF No. 11 at 8.

The position taken by Christenson is unpersuasive for several reasons. First of all, the GAF score of fifty-five provided by Dr. Last was assigned to Christenson on March 18, 2010. R. at 543. That rating fell squarely within the period of time in which Christenson contends that his condition was worsening. The United States Court of Appeals for the Third Circuit has specifically rejected the notion that reports submitted by consultative examiners and non-examining consultants lack probative value simply because they predate evidence later provided by treating sources. *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 361 (3d Cir. 2011). Furthermore, the ALJ had a valid reason for focusing on the evidence predating the alleged worsening of Christenson's condition. Christenson was insured for Title II benefits only through June 30, 2007. R. at 9, 11, 32, 224. In order to secure benefits under Title II, he had to establish the existence of a statutory disability beginning on or before that date. 42 U.S.C. § 423(a)(1)(A). The onset of a subsequent disability would have entitled Christenson to only SSI benefits under Title XVI, which are not dependent upon a claimant's insured status. *Bowen v.*

14

*Galbreath*, 485 U.S. 74, 76, 108 S.Ct. 892, 99 L.Ed.2d 68 (1988). Evidence postdating the expiration of a claimant's insured status may shed light on his or her condition during the insured period. *Reilly v. Office of Personnel Management*, 571 F.3d 1372, 1380-1383 (Fed.Cir. 2009); *Pollard v. Halter*, 377 F.3d 183, 193-194 (2d Cir. 2004). Christenson was not necessarily required to present documentary evidence predating the expiration of his insured status in order to establish his entitlement to Title II benefits. *Ivy v. Sullivan*, 898 F.2d 1045, 1048-1049 (5th Cir. 1990). Nonetheless, Christenson's argument concerning the ALJ's alleged reliance on outdated evidence is somewhat problematic under the present circumstances. Insofar as Christenson's DIB claim was concerned, the reports prepared by Dr. Marston and Dr. Heil were actually *more* timely than the assessment provided by Dr. Peterson-Handley.

A claimant's subjective complaints must be given "serious consideration" whenever the record establishes the existence of a medically determinable impairment that could reasonably be expected to cause the symptoms described in his or her testimony. *Mason v. Shalala*, 994 F.2d 1058, 1067-1068 (3d Cir. 1993). Christenson maintains that the ALJ failed to properly consider his subjective complaints. ECF No. 11 at 8. Contrary to Christenson's position, the record confirms that his testimony was accorded appropriate weight. Christenson testified that he had been advised to limit his bending, since excessive bending tended to aggravate his GERD.[14] R. at 48-49. The ALJ credited that testimony by limiting Christenson to jobs requiring only occasional bending. R. at 12. Christenson stated that dust would sometimes cause him to choke or vomit. R. at 46. The ALJ accommodated that limitation by precluding jobs involving concentrated exposure to fumes, odors, dusts, gases, and environments with poor ventilation. R. at 12. Although Christenson acknowledged that he could deal with supervisors and members of

---

[14] When questioned by the ALJ about possible exertional limitations, Christenson identified no limitations in his sitting, standing, walking, lifting and carrying abilities. R. at 48. Consequently, the ALJ had a reasonable basis for concluding that no exertional limitations were present. R. at 12; 20 C.F.R. §§ 404.1569a(b), 416.969a(b).

the general public without a problem, he asserted that he had previously argued with co-workers while performing work-related duties. R. at 51-52. The ALJ addressed that concern by restricting Christenson to jobs requiring only occasional interaction with co-workers. R. at 12. Christenson cannot impugn the ALJ's decision simply by pointing out that some of his testimony was discredited. The ALJ was not required to credit that testimony in every conceivable respect. *Chandler*, 667 F.3d at 363.

Dr. Peterson-Handley opined that Christenson's mental impairments would compromise his ability to report for work on a regular basis. R. at 419. Mahler testified that an individual working as a hand packer or delivery driver would be expected to remain productive for ninety percent of a given work day and miss no more than one day of work per month. R. at 62-64. He stated that an individual who could not meet those expectations would be precluded from holding a full-time job existing in significant numbers in the national economy. R. at 62-63. Christenson contends that the ALJ wrongfully rejected Mahler's testimony. ECF No. 11 at 10-11. Mahler's testimony, however, was not rejected in any way. It was simply not dispositive in this case. Since the disabling limitations described by Dr. Peterson-Handley were not deemed to be credible, the portion of Mahler's testimony relating to a *hypothetical individual* with those limitations did not preclude a finding that jobs consistent with *Christenson's* residual functional capacity existed in the national economy. *Craigie v. Bowen*, 835 F.2d 56, 57-58 (3d Cir. 1987).

The ALJ's decision does contain one mistake pertaining to Mahler's testimony. In her decision, the ALJ incorrectly stated that Mahler's testimony had established Christenson's ability to work as a bagger. R. at 18. Mahler identified the bagger position in response to the ALJ's first hypothetical question, which did not include the restriction precluding jobs involving more than occasional interaction with co-workers. R. at 60-61. When that restriction was added in a

follow-up question, Mahler testified that the hypothetical individual described by the ALJ could not work as a bagger, since that position would require frequent interaction with co-workers.[15] R. at 61-62. Nevertheless, Mahler confirmed that the limitation added by the ALJ's second hypothetical question would not compromise an individual's ability to work as a hand packer or delivery driver. R. at 61-62. He also stated that the described individual could work as an assembler. R. at 62. When the ALJ drafted her decision, she mistakenly relied on Mahler's response to her first hypothetical question rather than on the testimony elicited by her follow-up question. R. at 18, 60-62. That error, however, was inconsequential. Mahler's response to the ALJ's second hypothetical question established that an individual with Christenson's abilities and limitations could work as a hand packer or delivery driver. R. at 61-62. The ALJ specifically relied on the existence of those positions to deny Christenson's claims. R. at 18. Although the ALJ's finding that Christenson could work as a bagger must be discounted, her findings pertaining to the hand packer and delivery driver positions are independently sufficient to sustain her decision. The Court is not required to remand this case to correct an error that had no impact on Christenson's eligibility for benefits. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005).

## VI. Conclusion

The Commissioner's decision denying Christenson's applications for DIB and SSI benefits is "supported by substantial evidence." 42 U.S.C. § 405(g). Accordingly, it is respectfully recommended that Christenson's motion for summary judgment (*ECF No. 10*) be

---

[15] A vocational expert's testimony cannot be relied upon to establish the existence of jobs in the national economy consistent with a claimant's residual functional capacity unless the question eliciting that testimony makes reference to all of the claimant's functional limitations. *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). Where a credibly established limitation is not described, there is a danger that the vocational expert will identify jobs requiring the performance of tasks that would be precluded by the omitted limitation. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004).

17

denied, and that the Commissioner's motion for summary judgment (*ECF No. 13*) be granted. It is further recommended that the Commissioner's final decision be affirmed. In accordance with 28 U.S.C. § 636(b)(1), the parties have fourteen days to file written objections to this report and recommendation. A party's failure to file written objections will seriously impair his or her ability to challenge this Court's legal conclusions on appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193, n. 7 (3d Cir. 2011).

Dated: November 19, 2013

_____
LISA PUPO LENIHAN
United States Magistrate Judge

cc: All counsel of record